IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DEWEY C. MACKAY,<br><br>             Plaintiff,<br><br>v.<br><br>CAMERON BOLMAN et al.,<br><br>             Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>**(Under Seal)**<br><br>Case No. 2:09-cv-00285 CW<br><br>Judge Clark Waddoups |

This matter is before the court on Plaintiff Dewey C. MacKay's Motion for Temporary Restraining Order.  A hearing was held on April 7, 2009.  Peter Stirba appeared on behalf of Dr. MacKay. Jeannette F. Swent and Jared C. Bennett appeared on behalf of Defendants Cameron Bolman, the United States Drug Enforcement Administration, and Michelle M. Leonhart (collectively the "DEA").  After due consideration of the memoranda, documents, oral argument, and the facts and law relevant to this matter, the court renders the following Memorandum Decision and Order.  Because all parties appeared and had opportunity to present argument and evidence, the court will not proceed under Federal Rule of Civil Procedure 65(b) (Issuing TRO Without Notice), but will proceed under Rule 65(a).

## FACTUAL BACKGROUND

Dr. MacKay is an orthopedic surgeon, who also is involved in the care of patients for pain management.  The DEA registered him as a practitioner who was authorized to prescribe controlled substances listed on Schedules II through V.[1]  On February 26, 2009, the DEA suspended that

---

[1]  Order to Show Cause, at 1.

registration effective immediately based on its determination that Dr. MacKay posed "an imminent

danger to the public health and safety."[2]  The DEA based its findings on the following asserted facts:

1.   Dr. MacKay issued a controlled substance to a patient although she informed Dr.
     MacKay that she shared her prescription drugs with another person.

2.   Dr. MacKay prescribed opioids in exchange for inappropriate sexual activity.

3.   Four of Dr. MacKay's patients died while under his care, and the drugs Dr. MacKay
     supplied contributed to their deaths.

4.   Dr. MacKay prescribed controlled substances to patients who lacked a legitimate
     medical need for the drugs.  A medical expert determined his practice was
     substandard and posed a danger to his patients based on a review of nine patient files.

5.   Dr. MacKay's volume of prescriptions he issued for oxycodone increased by 30%
     between June 2008 and February 2009.  The dosage amounts also increased.

Dr. MacKay seeks reinstatement of his DEA registration on the basis that the above

allegations are either false or based on incorrect conclusions.  He sought an expedited hearing on this

issue before the DEA.  That hearing is scheduled for April 15, 2009 in Virginia.  The Administrative

Law Judge ("ALJ") specified that he will hear both the suspension and revocation issues at the same

hearing.  Dr. MacKay objects to holding the hearing in Virginia on due process grounds.  Although

the DEA does not oppose holding the hearing in Utah, the ALJ has refused to change venue.

Additionally, despite Dr. MacKay's request for bifurcation, the ALJ has combined the suspension

and revocation proceedings into one hearing.  Dr. MacKay asks this court to require that the hearing

be held in Utah.  It also asks that the court require the ALJ to recuse himself because he purportedly

has demonstrated a bias against Dr. MacKay.[3]

---

[2]  Id. at 3.

[3]  Besides refusing to change venue and bifurcate the proceedings, Dr. MacKay alleges
that the ALJ has acted hostile to his counsel, issued a protective order only against Dr. MacKay,

<u>**ANALYSIS**</u>

**I.      STANDARD OF REVIEW**

The Administrative Procedure Act ("ACT") "governs judicial review of agency actions."[4]

A court's review is limited to determining whether the Service's actions were "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."[5]   Such a "review is highly

deferential," and "[a] presumption of validity attaches to the agency action."[6]   Nevertheless, the court

has a duty "to ascertain whether the agency examined the relevant data and articulated a rational

connection between the facts found and the decision made."[7]   In its review, the "court must

determine . . . whether there has been a clear error of judgment."[8]

The DEA contends the administrative record is limited to the four corners of the Order to

Show Cause ("Suspension Order").  This is incorrect.  Under well-established standards,

> Judicial review of the agency action must be based on the whole
> administrative record, which includes everything that was before the
> agency pertaining to the merits of its decision.   The whole
> administrative record, therefore, consists of all documents and
> materials directly or *indirectly* considered by agency decision-makers
> and includes evidence contrary to the agency's position.   An
> incomplete record must be viewed as a fictional account of the actual

_____

etc.

⁴  <u>Citizens' Comm. to Save Our Canyons v. Krueger</u>, 513 F.3d 1169, 1176 (10th Cir. 2008) (citations omitted).

⁵  5 U.S.C. § 706(2)(A); <u>Biodiversity Legal Foundation v. Babbitt</u>, 146 F.3d 1249, 1252 (10th Cir. 1998).

⁶  <u>Citizens' Comm. to Save Our Canyons</u>, 513 F.3d at 1176.

⁷  <u>Id.</u> (quotations and citations omitted).

⁸  <u>Id.</u> (quotations and citations omitted).

> decisionmaking process. The whole record is not necessarily those documents that the agency has compiled and submitted as the administrative record; the court must look to all the evidence that was before the decision-making body.[9]

In this case, it appears the DEA had a transcript from a taped conversation, investigative reports from former patients, autopsy reports, and an expert report. The DEA submitted none of this evidence. Its recitation of the agency's decision is, therefore, incomplete. Dr. MacKay, however, has submitted some of this evidence, and the court relies upon it as part of its review of the DEA's decision.

## II.    IMMINENT DANGER

To obtain injunctive relief, Dr. MacKay "must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[10]

### A.    Likelihood of Success on the Merits

A review of the Suspension Order and documents relating to that Suspension Order do not support that the DEA articulated a rational connection between the facts found and the decision made regarding imminent harm. On the first ground, a review of the transcript from the taped conversation reveals that when Dr. MacKay's patient informed him that she had shared her prescription with another, Dr. MacKay informed her that was illegal and that the patient's friend would need to be seen

---

[9]  Center for Biological Diversity v. United States BLM, No. C-06-4884, 2007 U.S. Dist. LEXIS 81114, at *10 (N.D. Cal. Oct. 18, 2007) (emphasis in original) (internal quotations and citations omitted).

[10]  Wilderness Workshop v. U.S. Bureau of Land Mgmt., 531 F.3d 1220, 1224 (10th Cir. 2008).

by a doctor before she could be prescribed medication.  In other words, Dr. MacKay discouraged such practices and the patient acknowledged her understanding of the law.

Thus, there is no showing that Dr. MacKay placed the public in imminent danger by dispensing controlled substances to patients with knowledge that the drugs would be shared with others.  Indeed, since the DEA sent the supposed patient to Dr. MacKay with the intent to induce him to illegally dispense controlled substances and with a wire from which it prepared a written transcript, the DEA obviously knew the true facts and misrepresented them in its Suspension Order.  Such conduct would support a finding that the DEA proceeded carelessly and without proper basis, if not in bad faith.

Second, Dr. MacKay argues that the allegations relating to inappropriate sexual activity are stale.  There is nothing in the Suspension Order from which the court can determine when the alleged sexual misconduct occurred.  The DEA offered no evidence at the hearing to address this issue.  Argument at the hearing, however,  indicates that those allegations occurred in 2006 or earlier.  The DEA presented no evidence that any of Dr. MacKay's recent contacts with patients would support a risk of imminent danger because of alleged sexual misconduct.[11]

Third,  a review of the four autopsy reports shows that one patient died in 2003, two died in 2006, and one died in 2007.  All of these dates are well before the Suspension Order.  Moreover, three of the reports indicate that the patients died either as a result of taking illegal drugs or through a combination of drugs, which combination was not prescribed by Dr. MacKay.  Thus, the pain medication drugs were not *the* cause of death.  In the fourth case, a person died in 2006 as a result of the "depressant effects of hydrocodone and oxycodone," which were at toxic concentrations.  Had

---

[11]  See Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 829 (5th Cir. 1976).

the drug been taken individually, however, "the concentration[] was below the concentration range that has been reported to cause death when it is the only drug present."  Given the stale date of these reports and the contrary statements about the causes of death, they do not support that Dr. MacKay's actions pose an imminent risk of harm to the public.

The DEA nevertheless contends that a medical expert found the drugs Dr. MacKay prescribed contributed to the patients' deaths.  The expert report was not attached to the Suspension Order, nor was it provided to the court at this hearing.  It is therefore impossible for the court to know exactly what the expert report stated.  On the other hand, Dr. MacKay submitted evidence from reputable medical experts that the presence of the controlled substances, as shown in the autopsy reports, does not indicate misconduct by Dr. MacKay.  This raised serious questions about whether the DEA could reasonably have concluded, based on the records before it, that Dr. MacKay was improperly dispensing a controlled substance or causing harm. The DEA chose not to present any evidence to counter Dr. MacKay's evidence or to support the DEA's finding.  When this is coupled with the DEA's incorrect reporting of the transcript, as discussed above, the court has concerns that the DEA's representations in its Suspension Order are merely conclusory statements that lack a rational connection between the facts found and the decision that was made.

Fourth, Dr. MacKay has provided an expert report that indicates Dr. MacKay's treatment of the nine patients at issue was typical and consistent with normal pain management practices. Furthermore, the report indicates that nothing Dr. MacKay did placed the patients in danger, much less imminent danger.  As stated earlier, the DEA did not offer its own expert report to refute these statements.  Thus, the only thing the court has is the DEA's representation about what the report says rather than the actual report.  Given that other representations have not been entirely accurate when

the underlying evidence has been reviewed, the court is not persuaded that the facts support the DEA's conclusion.

This is not changed by the last factor, namely, that Dr. MacKay has increased the number of prescriptions he issued. When asked, counsel for the DEA said he was unaware if Dr. MacKay was treating an increased number of patients during the relevant time period. Evidence that Dr. MacKay had increased the number of prescriptions issued by itself does not support a reasonable conclusion that there is an imminent danger of harm to the public. A number of factors, such as an increase in the number of patients or the type of pain being treated, could explain the increase. Without considering other factors that could explain the increase, the DEA could not have rationally concluded there is improper conduct. Consequently, the court finds that Dr. MacKay is likely to prevail in showing that his conduct does not pose an imminent danger to the public.

### B.      Irreparable Harm

Dr. MacKay asserts he is suffering the loss of good will and reputation as a result of his registration being suspended. Dr. MacKay is also precluded from treating his chronic pain patients and is effectively precluded from practicing a significant part of his profession. The DEA argued at the hearing that Dr. MacKay could prescribe other pain medication such as ibuprofen, and thus, the harm was limited. The suggestion that chronic pain patients would go to Dr. MacKay to receive ibuprofen underscores the weakness of the DEA's position and the lack of careful consideration and a rational basis for its improvident issuance of the Suspension Order. Under these circumstances, the court finds that Dr. MacKay is suffering irreparable harm as a result of his suspended registration.

**C.      Balance of the Harm Between the Parties**

In opposition to Dr. MacKay's motion, the DEA offers no evidence or argument that the DEA would suffer harm and, given the lack of rational support for finding imminent danger to the public, there appears to be no factual basis to find that the balance of harm favors the DEA.  In contrast, the record supports significant harm to Dr. MacKay and his patients.   If an injunction issues, the DEA will not suffer harm.  In contrast, if an injunction does not issue, Dr. MacKay likely will suffer the loss of good will and reputation and will be hampered in his treatment of his patients. The balance of the harm, therefore, weighs in Dr. MacKay's favor.

**D.      Public Interest**

The public has an interest in preventing the issuance of inappropriate controlled substance prescriptions.   It also has an interest, however, in patients being effectively treated for pain management.  Indeed, Dr. MacKay's expert opined that "abrupt discontinuance of care puts Dr. MacKay's patients who are on chronic pain therapy at risk for potentially severe adverse health consequences."[12]  The court thus concludes the public's interest will not be adversely impacted if an injunction issues that reinstates Dr. MacKay's registration.

**III.     VENUE**

**A.      Likelihood of Success on the Merits**

Dr. MacKay contends that if the administrative hearing is held in Virginia, he will effectively be denied the right to cross-examine witnesses and call witnesses in his defense.  In *Goldberg v. Kelly*, the United States Supreme Court stated:  "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse

---

[12]  Fine Expert Report, at 4.

witnesses."[13]  This includes cases involving administrative actions.[14]  Thus, due process requires that

Dr. MacKay be allowed to cross-examine adverse witnesses.

According to Dr. MacKay, the DEA has stated that if the hearing is held in Virginia, the DEA

intends to call an investigative officer to summarize the testimony of witnesses in Utah and what the

officer learned in his investigation rather than calling the actual fact witnesses to testify.  The DEA

did not refute this representation at the hearing.  It appears that the critical, if not all, fact witnesses

with relevant information are located in Utah.  Dr. MacKay argues that if the hearing is held in

Virginia, he cannot compel the fact witnesses to appear and cannot effectively cross-examine

testimony presented as summary hearsay.  Because this is an administrative proceeding, the DEA

can present its case by hearsay evidence.  In a court proceeding, where the rules of evidence apply,

such hearsay would not be admissible to support the finding.  The unique circumstances of this case,

where the ALJ refuses to move the hearing to Utah and where the case could be proven against Dr.

MacKay by hearsay, effectively would allow the DEA to deny Dr. MacKay the cross-examination

of the most critical witnesses.

Although the DEA argues that Dr. MacKay may be able to present witnesses by telephone

or video conferencing, the record at this time indicates that the ALJ would not be receptive to

allowing testimony by such means.  Indeed, the ALJ has denied the DEA permission to present its

medical expert by video conference.  Moreover, because the ALJ has refused to bifurcate the

suspension and revocation proceedings, Dr. MacKay effectively does not have time to pursue other

---

[13]  397 U.S. 254, 271 (1970).  The Supreme Court has since distinguished this case on other grounds that are not relevant here.

[14]  Id. (quotations and citation omitted).

methods that may be available to present testimony from the Utah witnesses.  It is striking that the DEA does not oppose holding the hearing in Utah and that the ALJ denied the request to move the hearing to Utah without explanation or reason other than that the applicable regulation allows him to hold the hearing outside of Utah.  Faced with these specific facts, the court concludes that Dr. MacKay likely will be effectively deprived of the right to cross-exam adverse witnesses and effectively compel witnesses to appear in his defense unless the hearing is held in Utah.

**B.      Irreparable Harm**

Dr. MacKay has made the required showing that his right to procedural due process will be denied if he is forced to defend himself in Virginia.  Deprivation of a constitutional right generally constitutes irreparable injury.[15]  The court finds that would be the case here.  Dr. MacKay therefore has met this element.

**C.      Balance of the Harm Between the Parties and Public Interest**

Notably, the DEA does not oppose holding the hearing in Utah.  In fact, as the DEA conceded at the hearing, such administrative hearings are often held in the location where the respondent holds the certificate.  The DEA does not argue that the balance of harm requires that the hearing be held in Virginia.  Given the lack of any explanation by the ALJ for denying the motion to move the hearing to Utah and the undisputed fact that the witnesses are located here, there does not appear to be any argument in this case that the balance of harm weighs in favor of denying Dr. MacKay the relief requested.  Indeed, apparently even the DEA's medical expert is not located in Virginia and would be required to travel.  There was no argument that it would be more difficult for

---

[15]  <u>SAC & Fox Nation of Missouri v. LaFaver</u>, 946 F. Supp 884, 887 (D. Kan 1996) *rev'd* on other grounds, 213 F.3d 566 (10th Cir. 2000).

the DEA's expert to travel to Utah rather than Virginia.  In contrast, Dr. MacKay may suffer significant harm if he is required to defend himself in Virginia.  Not only will he incur significant cost as a result of this venue, he is likely to be handicapped in presenting an effective defense.  In balancing this harm, any question that remains regarding whether venue should be changed is obviated.

Likewise, the court finds that a change is venue will not be adverse to the public.  Indeed, it likely will be more economical from a public stand point to hold the hearing in Utah because counsel, witnesses, and experts are all located here.  Moreover, the public interest favors a fair hearing in which the evidence can be presented by the actual witness testimony rather than hearsay. Thus, the court concludes Dr. MacKay has met his burden in showing that venue should be changed to Utah.

## IV.   RECUSAL

Dr. MacKay also seeks to have the ALJ recused from the case based on alleged judicial bias. Primarily, Dr. MacKay offers as support for bias the list of rulings against Dr. MacKay.  The fact that a judge rules against a party, however, is not sufficient to establish bias.   Although the court may question whether the ALJ may have more properly decided certain motions in a different way, such rulings do not establish bias sufficient to require recusal.  Dr. MacKay further argues, however, that the ALJ has also shown hostility toward counsel for Dr. MacKay.  Hostility, if sufficiently well established to the degree that one must question whether the judge can fairly decide the questions presented, would support recusal.  In this case, the evidence is not sufficiently well established to support a finding that the ALJ has such a degree of hostility toward Dr. MacKay or his counsel. Moreover, Dr. MacKay may have other remedies available to address this issue if he concludes that

the hostility continues.  As the DEA argues, there is a presumption that the ALJ has acted with fairness.  Dr. MacKay has not submitted sufficient evidence to rebut this presumption.

V.     **SECURITY**

The DEA has not argued that any amount of security should be required should the court grant Dr. MacKay's motion.  No argument or evidence was submitted on this issue.  Based on the record as presented, the court is unable to find that security should be required.  There does not appear to be risk of monetary loss to the DEA from the reinstatement of the DEA Certificate nor from changing the venue of the hearing from Virginia to Utah.  Should the DEA wish to argue that security should be required, it may submit argument and evidence to support that position on or before April 15, 2009.  In the event the DEA moves for security, Dr. MacKay may respond within five business days.

For the reasons set forth above, the court HEREBY ORDERS THAT Dr. MacKay's motion is GRANTED in part and DENIED in part as follows:[16]

1.     Dr. MacKay's DEA Certificate of Registration AM9742380 is reinstated pending final determination of the Administrative proceeding *In the Matter of Dewey C. MacKay,* Docket No. 09-28, and the DEA is ordered to return such DEA Certificate and any unused order forms to the possession of Dr. MacKay;

2.     The administrative hearing pending *In the Matter of Dewey C. MacKay,* Docket No. 09-28 shall be held in the District of Utah;

3      The motion to stay the administrative hearing is DENIED.  The ALJ is in the best position to determine the schedule and timing of such hearing.

---

[16]  Docket No. 3.

4.      All other relief requested is DENIED.

DATED this 7th day of April, 2009.

BY THE COURT:

Honorable Clark Waddoups
United States District Judge

United States District Court
for the
District of Utah
April 8, 2009

******MAILING CERTIFICATE OF THE CLERK******

RE:   MacKay v. Bolman et al
      2:09-cv-00285 CW *SEALED*


Peter Stirba
STIRBA & ASSOCIATES
215 S STATE STE 750
PO BOX 810
SALT LAKE CITY , UT 84111

Jeannette F. Swent
US ATTORNEY'S OFFICE (UT)

---

Aimee Trujillo