SEALED

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DEWEY C. MACKAY,<br><br>Plaintiff,<br><br>v.<br><br>CAMERON BOLMAN et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>**(Under Seal)**<br><br>Case No. 2:09-cv-00285 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on the defendants' motion to dismiss the first cause of action pled by plaintiff Dewey C. MacKay, M.D. ("Dr. MacKay") as a *Bivens* action against Defendants Cameron Bolman and Michelle Leonhart in their individual capacities. Ms. Leonhart is the acting administrator of the United States Drug Enforcement Administration (the "DEA") and Mr. Bolman is a DEA investigator. The court previously granted plaintiff's motion for a preliminary injunction requested in the second cause of action,[1] and dismissed the third and fourth causes of action as being moot.[2] The court now grants the motion to dismiss the first cause of action for the reasons set forth below.

## BACKGROUND

Dr. MacKay has practiced medicine since 1973. He is a board-certified orthopaedic surgeon and has practiced in Northern Utah for many years. He also has been recognized as a prominent

---

[1] *See* Memorandum Decision & Order, 12 (Docket No. 13).

[2] *See* Minute Entry (Docket No. 29).

citizen, receiving numerous awards for community service. In recent years, Dr. MacKay's practice has focused on the treatment of pain by prescribing controlled substances for which he has held the required DEA registration.

On February 26, 2009, the DEA suspended Dr. MacKay's registration to prescribe controlled substances based on its conclusion that he posed an imminent danger to public health and safety. The DEA's suspension order also provided for a post-deprivation hearing, which an administrative law judge originally scheduled for April 15, 2009, in Arlington, Virginia. On March 31, 2009, Dr. MacKay filed this action, alleging four causes of action. First, Dr. MacKay alleged under *Bivens v. Six Unknown Named Agents*[3] that Defendants Bolman and Leonhart deprived him of his Fifth Amendment right to procedural due process. Second, Dr. MacKay requested a temporary restraining order to dissolve the DEA's immediate suspension order. Third, Dr. MacKay sought a declaratory judgment requiring the DEA administrative law judge to hold the post-deprivation hearing in Utah. Finally, as his fourth cause of action, Dr. MacKay sought to recuse the administrative law judge, claiming judicial bias.

On April 7, 2009, this court issued a preliminary injunction, which dissolved the DEA's suspension order and ordered that the DEA hearing be held in Utah. The court denied Dr. MacKay's request to recuse the administrative law judge and later dismissed the third and fourth counts as moot. The DEA administrative hearing was held in Utah from April 28 to May 1, 2009. It addressed whether Dr. MacKay's registration to issue prescriptions for controlled substances should be revoked. The administrative law judge issued its decision on July 31, 2009, and recommended revocation.

---

[3] 403 U.S. 388 (1971).

Dr. MacKay's first cause of action (the "*Bivens* claim") makes allegations against Defendant Leonhart in her individual capacity. Nevertheless, the caption of the case refers only to "Michelle M. Leonhart, Acting Administrator of the Drug Enforcement Administration, in her official capacity." Dr. MacKay acknowledges that he cannot proceed against Leonhart in her official capacity and argues that an error in the caption does not change the substantive allegations in the body of the complaint. The court agrees, although the body of the complaint is not itself a model of clarity that Dr. MacKay is proceeding against Leonhart in her individual capacity. Nevertheless, the court interprets the complaint as a claim against her individually.

The essence of Dr. MacKay's first cause of action is that Defendants Bolman and Leonhart have acted under color of federal law to interfere with his right to procedural due process by (1) failing to give him notice and a chance to be heard prior to the suspension of his DEA registration; (2) failing to set an expeditious and fair hearing; (3) requiring him to defend at a hearing to be held in Virginia; and (4) seeking an immediate suspension based on false, incorrect and insufficient facts that any patient was in immediate danger. Dr. MacKay claims the immediate suspension unlawfully deprived him of his DEA registration, in which he has a property interest, causing him injury for which he seeks both compensatory and punitive damages.

## ANALYSIS

### I. STANDARD FOR 12(b)(6) MOTION

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) unless it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] Under these pleading standards, in the context of a *Bivens*

---

[4] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

claim, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[5] The Supreme Court has made it clear that (1) the court may not assume the truth of conclusory allegations, and (2) "a court should assume [the] veracity" of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief."[6] On a motion to dismiss, the court may not credit conclusory allegations. The court is required to examine whether Dr. MacKay's complaint contains well-pleaded factual allegations that, taken as true, plausibly give rise to an entitlement to relief in the form of money damages. If Dr. MacKay's factual allegations do not meet this standard, the court must dismiss the first cause of action.

## II. *BIVENS* CAUSE OF ACTION

### A. Limitation on Scope

Dr. MacKay seeks an award of damages and punitive damages from Defendants Bolman and Leonhart under *Bivens* for alleged deprivation of his Fifth Amendment right to procedural due process. The legal precedents do not support Dr. MacKay's claim. In *Bivens*, the Supreme Court recognized an implied remedy for damages under the particular and somewhat unique facts of that case. The Court has made it clear, however, that such implied causes of action are disfavored generally and has specifically expressed reluctance to extend *Bivens* liability "to any new context or new category of defendants."[7] The Court has stated that a damages remedy "is not an automatic entitlement . . . and in most instances we have found a *Bivens* remedy unjustified."[8] In *Wilkie*, the

---

[5] *Id.* (citation omitted).

[6] *Id.* at 1950.

[7] *Id.* at 1948 (quotations and citation omitted).

[8] *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

-4-

Court held that a *Bivens* remedy should be inferred only if (1) there is no alternative, existing process for protecting a constitutional interest, and (2) there are no special factors counseling hesitation against a judicially created remedy.[9] The court concludes that it is not appropriate to infer a *Bivens* remedy in this case.

B.  **Existing Administrative Process**

Dr. MacKay's constitutional interest is fairly protected by an administrative process established by statute. The administrative process precludes any need to find an implied remedy that no court has previously recognized under similar facts. The DEA administrative hearing process provides a meaningful alternative to protect Dr. MacKay's property interest in his DEA registration. Although Dr. MacKay may prefer to have these claims resolved in this court, Congress has created a statutory scheme,[10] which in its judgment fairly balances the property interest of a doctor in the DEA registration with the need to protect the public from a doctor who poses an imminent danger to the public health.[11] Compliance with the statutory process meets the due process requirements.[12]

---

[9] *Id.*

[10] *See* 21 U.S.C. §§ 821–831 (2006). This statutory scheme addresses the denial, revocation, and suspension of registration. In pertinent part and with emphasis added, it states: "The Attorney General may, in his discretion, suspend any registration *simultaneously with the institution of proceedings under this section*, in cases where he finds that there is an imminent danger to the public health or safety." *Id.* § 824(d).

[11] *See Novelty Distribs., Inc. v. Leonhart*, 562 F. Supp. 2d 20, 30 (D.D.C. 2008) (holding that this statutory scheme "comports with Due Process requirements").

[12] *See, e.g., Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 241 (1988) (upholding immediate suspension of an indicted bank officer in order to maintain public confidence in U.S. banking system); *Barry v. Barchi*, 443 U.S. 55, 64–66 (1979) (allowing immediate suspension of horse trainer suspected of drugging horse in order to maintain integrity of horse racing and protect public from harm, but requiring "a prompt postsuspension hearing"); *Dixon v. Love*, 431 U.S. 105, 112–15 (1977) (upholidng summary revocation of trucking license, for repeated motor vehicle

The Tenth Circuit recently addressed the issue of a post-deprivation remedy and summarized the Supreme Court's analysis:

> In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly. Quick action may turn out to be wrongful action, but due process requires only a post deprivation opportunity to establish the error.[13]

Under the facts of this case, the administrative hearing had already been scheduled, on an expedited basis, when Dr. MacKay filed his complaint. Any claim he had because of the refusal of the administrative law judge to hold the evidentiary hearing in Utah has been resolved by the Court's injunction that required the hearing be held in Utah. The hearing has now been held. These facts simply do not meet the *Bivens* requirements.

### C. Special Factors Are Present that Counsel Hesitation

At times, Congress creates a statutory scheme that either does not address damages or does not provide a full remedy for damages if they are addressed. Nevertheless, a *Bivens* remedy should not be inferred where there are "special factors counseling hesitation in the absence of affirmative action by Congress."[14] Consideration of these special factors requires the court to inquire whether "Congress has provided what it considers adequate remedial mechanisms for constitutional

---

offenses, to promptly remove safety hazard and protect public); *North Am. Cold Storage Co. v. Chicago*, 211 U.S. 306, 315–16 (1908) (permitting immediate seizure and destruction of food in cold storage, when unsafe for consumption, in order to protect life and health of citizens).

[13] *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (holding that closure of restaurant without prior opportunity to be heard did not, in a § 1983 action, violate procedural due process rights where owner had opportunity for post-deprivation hearing).

[14] *Bivens*, 403 U.S. at 396.

violations that may occur in the course of its administration."[15] If it has provided a remedial mechanism, then a *Bivens* action typically cannot be maintained even if that remedial mechanism fails to compensate a person for damages.

In 1983, the Supreme Court held in *Bush v. Lucas* that the remedies of the Civil Service Reform Act constituted a "special factor" precluding a federal employee from pursuing a *Bivens* remedy for constitutional torts arising in the context of his employment.[16] The Court affirmed the dismissal of the claim, holding that special factors dictated that a judicially created damages action should not be inferred where Congress had created "comprehensive procedural and substantive provisions giving meaningful remedies against the United States."[17] Similarly, in *Chilicky*, the Court observed that where Congress enacts a "comprehensive statutory scheme" and gives claimants a forum to challenge agency decisions, "special factors counseling hesitation" may preclude a *Bivens* remedy.[18]

The strictness of these requirements is clear from the Court's statement that even the "absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."[19] The Court explained that even where a damages remedy has not "been included in the elaborate remedial scheme designed by Congress," it is not appropriate for courts to alter the plan adopted by Congress

---

[15] *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).

[16] 462 U.S. 367 (1983).

[17] *Id.* at 368.

[18] 487 U.S. at 423, 428.

[19] *Id.* at 421–22.

by implying a right of action for damages directly against federal officials in their individual capacity.[20]

The Court's analysis in *Chilicky* strongly indicates that courts should defer to Congressional decision-making when fashioning implied remedies. Where, as in this case, Congress has acted to create a comprehensive statutory scheme to address an issue of public health, the court must be hesitant to presume that any failure to provide a damages remedy was "inadvertent."[21] In cases where Congress has created a statutory scheme to address public concerns—a scheme that Congress deemed appropriate—courts are not free to supplement the remedies of the relevant statute with a judicially created damages action.[22]

Moreover, the court should be hesitant to find an implied remedy that risks impairing the ability of an agency to accomplish the objective for which it was created. As a matter of public policy, "agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment."[23] The court may disagree with the actions taken by the agency, but when the regulated party "has ample opportunity to challenge the legality of the proceeding," the requirements of due process have been met and the rights of the regulated person have been fairly protected.[24] Under the facts of this case and under existing precedents, Dr. MacKay has failed to present a claim that meets the need or requirements to create an implied *Bivens* remedy.

---

[20] *Id.* at 414, 429.

[21] *Id.* at 423.

[22] *Id.* at 425, 429.

[23] *Butz v. Economou*, 438 U.S. 478, 516 (1978).

[24] *Id.* at 515.

The defendants also argue that Dr. MacKay's *Bivens* claim must be dismissed because they are entitled to qualified immunity and because Dr. MacKay fails to state a claim that is plausible on its face. Because the court has found that Dr. MacKay does not have a *Bivens* claim, it need not address these arguments.

**ORDER**

For the reasons stated above, the court rules as follows:

(1) The defendants' motion to dismiss the First Cause of Action (*Bivens* Action Defendants Bolman and Leonhart in Their Individual Capacities for Deprivation of Plaintiff's Fifth Amendment Right to Procedural Due Process) is **GRANTED**.[25]

(2) Previously, the following actions were taken by the court:

    a.    The court **GRANTED** the defendants' motion to dismiss the Second Cause of Action (For Declaratory Relief in the Form of a Temporary Restraining Order Reinstating Dr. Mackay's DEA Registration) on the ground that the claim had become moot when the court granted a preliminary injunction for the relief requested; and

    b.    The court **GRANTED** the defendants' motion to dismiss the Third Cause of Action (For Declaratory Relief in the Form of an Order Declaring That Dr. Mackay Be Granted an Expeditious and Fundamentally Fair Administrative Hearing in the District of Utah), and the Fourth Cause of Action (Violation of Due Process Right to a Fundamentally Fair Hearing), also on the grounds that the claims had become moot when the court entered a preliminary injunction, and the administrative hearing was completed in Utah.

Because no cause of action remains, the Complaint is hereby **DISMISSED** with prejudice.

---

[25] Docket No. 19.

DATED this 12th day of April, 2010.

BY THE COURT:

*/s/ Clark Waddoups*

Clark Waddoups
United States District Judge

United States District Court
for the
District of Utah
April 12, 2010

******MAILING CERTIFICATE OF THE CLERK******

RE: Mackay v. Bolman et al
    2:09cv285-CW


Peter Stirba
STIRBA & ASSOCIATES
215 S STATE STE 750
PO BOX 810
SALT LAKE CITY , UT 84111

Jeannette F. Swent
US ATTORNEY'S OFFICE (UT)
via interoffice mail

Lynsie Severnak, Deputy Clerk